## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

**TAMARA SCHEPPELMAN**

      Plaintiff,                                Case No. 1:24-cv-01104-HYJ-RSK

v.                                          COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**COUNTY OF BERRIEN**

                                              JURY TRIAL DEMANDED

      Defendants.

_____

**TODD F. FLOOD (P58555)**
Ryan E. Myers
Flood Law, PLLC
155 West Congress Street, Suite 350
Detroit, Michigan 48226
PH: (248) 547-1032
tflood@floodlaw.com
rmyers@floodlaw.com
*Attorney for Plaintiff*

_____

## **FIRST AMENDED COMPLAINT**

      There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.

NOW COMES Plaintiff, TAMARA SCHEPPELMAN, by and through counsel, TODD F. FLOOD and FLOOD LAW, PLLC, and for her Complaint against the above-named Defendant, states as follows:

## PARTIES

1. Plaintiff, TAMARA SCHEPPELMAN (hereinafter referred to as "Ms. Scheppelman"), is and at all relevant times herein was a resident of Holland, Michigan.

2. At all times relevant to this lawsuit, Defendant, COUNTY OF BERRIEN (hereinafter referred to as "Berrien County"), is a political subdivision of the State of Michigan duly organized and carrying out governmental functions pursuant to the laws of Michigan, one of the functions being to organize, operate, staff, and supervise its detention center commonly known as the Berrien County Jail (hereinafter "BCJ"). Defendant Berrien County was, at all times relevant to this matter, the public employer of the individual officers named in this Complaint, including Sheriff Paul Bailey, Lieutenant Celena Herbert, Lieutenant Nicholas Magro, Officer Jonathon Bowman, Officer Kyle Culbertson, and Officer Crystal Antus (hereinafter collectively referred to as "BCJ Officers").

3. Ms. Scheppelman was hired by Wellpath (formerly known as Correct Care Solutions) in May of 2016 as a Registered Nurse in the Medical Operations Department of the BCJ.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred upon this Court pursuant to 28 USC § 1331.

5. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 USC § 1367, over any and all state law claims and against all parties that are so related to claims in this action, within the original jurisdiction of this Court, that they form part of the same case or controversy.

6. This Court has personal jurisdiction over the named Defendant because they either reside in the State of Michigan and/or do systematic and continuous business in Michigan.

7. Venue is proper in this jurisdiction under 28 USC § 1391(b)(2) because the Defendant resides or is administratively located within the Western District of Michigan, and the events giving rise to this claim occurred within the boundaries of the Western District of Michigan.

## STATEMENT OF FACTS

8. This civil action seeks monetary relief for the unlawful discrimination that Plaintiff, Ms. Scheppelman, endured while employed at BCJ in violation of

the Age Discrimination in Employment Act (hereinafter "ADEA"), Elliott-Larsen Civil Rights Act (hereinafter "ELCRA") and Title VII of the Civil Rights Act of 1964.

9. Defendant Berrien County is an "employer" within the meaning of the ADEA.

10. Defendant Berrien County employs over 20 individuals, thereby subjecting it to the mandates of the ADEA.

11. Ms. Scheppelman was employed by Wellpath for approximately six years and, during that time, she worked exclusively at BCJ as a Registered Nurse in the Medical Operations Department of BCJ.

12. Ms. Scheppelman was born in 1957 and was 59 years old when she first began working at BCJ.

13. Ms. Scheppelman was over forty years old during her employment with Wellpath at BCJ.

14. Defendant Berrien County and Wellpath were joint employers of Ms. Scheppelman because they co-determined the matters governing essential terms and conditions of employment.

15. Ms. Scheppelman was hired specifically for a position at BCJ and the entirety of her work occurred at BCJ. Because Ms. Scheppelman worked directly in the jail, the conditions of her employment were often controlled by BCJ staff, agents of Defendant.

16. BCJ officers would direct Ms. Scheppelman where to go during working hours, exerting control over her day-to-day schedule.

17. Officers threatened employees, including Ms. Scheppelman, with removal of their clearance if they did not follow the officers' direction, which would effectively remove the employee's ability to work at BCJ.

18. Upon information and belief, officers and other BCJ officials would also report on the performance of nurses in BCJ to their supervisor.

19. During the course of her employment with Defendant, Ms. Scheppelman was subject to unwelcome harassment based on her age by BCJ Officers.

20. The incidents of harassment include but are not limited to the following:

**Explicit Verbal Harassment**

21. Officer Culbertson made repeated derogatory remarks to Ms. Scheppelman about her age, including "Aren't you too old to be working here?," "When are you going to retire?," and "Why do we always get the old nurses?"

22. Officer Bowman, on at least one occasion, dismissed Ms. Scheppelman's capabilities by saying she was "too old."

23. Officer Bowman further frequently belittled Ms. Scheppelman, referring to her as "slow," further undermining her professional standing due to her age.

**Harassment During Medication Pass**

24. A crucial component of Ms. Scheppelman's nursing duties at BCJ involved conducting medication passes, i.e., administering prescription medications to BCJ inmates.

25. BCJ policy regarding medication passes was revised under new command staff, requiring the first two floors of BCJ be completed by 9 PM.

26. BCJ Officers Herbert, Magro, Bowman and Culbertson systematically obstructed Ms. Scheppelman during her medication passes, intentionally preventing her from fulfilling her responsibilities by 9 PM.

27. When Ms. Scheppelman was unable to complete her medication pass by 9 PM, BCJ Officers Herbert, Magro, Bowman and Culbertson would lock her out of inmate facilities and forbid her from finishing her nursing duties, i.e., providing prescription medications to BCJ inmates.

28. BCJ Officers employed a variety of obstructive tactics to impede Ms. Scheppelman's timely completion of her medication pass, including but not limited to the following:

    a. Numerous inmates at BCJ are housed in administrative lockdown units that require a BCJ Officer's key to access.[1] In accordance with BCJ

---

[1] During Ms. Scheppelman's employment with Wellpath at BCJ, approximately 125 inmates were on lockdown. On several occasions, Ms. Scheppelman had to wait upwards of 45 minutes for an officer to arrive to unlock the units before she could distribute medications to the inmates.

standard practice, Wellpath nurses were required to contact BCJ Officers via central control whenever access to these units and/or inmates was needed. On multiple occasions, when Ms. Scheppelman arrived at these locked units during her medication pass and requested assistance, the BCJ Officers deliberately caused unreasonable delays in coming to unlock the units. Consequently, Ms. Scheppelman was at the mercy of BCJ Officers to access certain inmates and provide them with their prescribed medications.

b. On numerous occasions, Officers Herbert, Magro, Bowman and Culbertson interrupted Ms. Scheppelman during the administration of medications, ostensibly to address "inmate emergencies." The alleged emergencies cited by the Officers lacked the severity and urgency of a true emergency. The so-called "emergencies" often involved trivial requests, such as an inmate wanting a boil to be examined, another complaining of a mere headache, and yet another reporting a toothache.

c. BCJ Officers frequently taunted Ms. Scheppelman with derogatory remarks over the BCJ radio system, with officers callously labeling her as "slow" due to her age.

    d. BCJ Officers frequently refused to grant Ms. Scheppelman access to specific areas of the facility by not opening doors via master control, preventing her from administering medications in a timely manner.

29. The flagrant disruptions Ms. Scheppelman faced during her medical pass compromised both the medical care that Ms. Scheppelman was duty-bound to deliver and revealed a troubling disregard for the welfare of Berrien County inmates by the BCJ Officers.

30. Ms. Scheppelman formally raised her concerns regarding the incessant interruptions from BCJ Officers during medication passes to the attention of her supervisor, Wellpath Health Services Administrator, Karen Thomas (hereinafter referred to as "Ms. Thomas").

31. In response to Ms. Scheppelman's concerns, Ms. Thomas sent an e-mail to BCJ Officers instructing them to only interrupt nurses in cases of true emergencies.

32. Notwithstanding Ms. Thomas's clear directive, the BCJ Officers continued their disruptive behavior to purposely prevent Ms. Scheppelman from finishing her medication pass by 9 PM, demonstrating a blatant disregard for both inmate/patient safety and Ms. Scheppelman's professional obligations as a nurse.

33. Throughout Ms. Scheppelman's employment with Defendants she consistently reported serious concerns regarding inmate care at BCJ, including but not limited to the following:

    a. Wellpath nurses improperly altering medications, including shaving pills to make them appear equivalent to the prescribed dosage;

    b. Unauthorized distribution of medications, including instances where Wellpath staff administered unprescribed medications to inmates in place of their prescribed medications due to the latter being unavailable;

    c. Wellpath nurses failing to perform mandated mouth checks to verify that inmates swallowed their prescribed medications;

    d. Failure to administer medications to inmates that were ordered;

    e. Wellpath nurses inaccurately documenting that inmates had "refused" medications on their medical charts when medications were never offered to those inmates;

    f. Wellpath nurses failing to complete and/or ignoring receiving screens;

    g. Officers failing to transport inmates to the hospital for necessary medical clearance and/or treatment of their wounds, opting instead to return them to BCJ, in direct violation of established BCJ policy;

    h. Officers overriding directives from medical staff to place specific inmates on suicide watch, despite medical evaluations indicating such measures were vital for the inmates' safety;

    i. Officers providing mats to inmates without the requisite medical authorization, solely to alleviate the officers' obligations to address inmate complaints during the night, and;

    j. Officers repeatedly neglecting to assist an inmate off of the floor and into their bed despite the inmate's impaired mobility and coordination resulting from a progressive neurological disorder that severely limited their ability to move independently.

34. Ms. Scheppelman's efforts to raise legitimate concerns regarding patient care were met with indifference from her superiors, who dismissed her claims and responded with overt hostility.

35. Occasionally, Ms. Scheppelman felt it necessary to apologize, as she feared that any assertion of her professional responsibilities might be misconstrued as defiance against the BCJ Officers' lackadaisical approach to their duties, potentially inviting retaliation and further exacerbating an already hostile work environment.

36. The prevailing attitude among BCJ Officers was one of dismissal, characterized by a mentality of "don't bother us and we're good," implying

that Ms. Scheppelman's nursing needs were an unwelcome intrusion on their indifference.

37. Whenever Ms. Scheppelman sought assistance from BCJ Officers, she was met with resentment, as if her requests were viewed as an imposition that warranted payback for requiring them to fulfill their duties as an officer.

38. On or about January 12, 2023, Ms. Scheppelman communicated to Ms. Thomas that "Sheriff Bailey has made [a] hostile work environment and I can not and will not put my license at risk by officers who don't have a medical degree." Ms. Scheppelman emphasized that the restrictions placed on her ability to administer medications were not only detrimental to inmate care but also posed a significant risk to her professional standing.

39. The Officers' harassment became so pervasive that Ms. Scheppelman was constructively discharged on January 12, 2023. On top of the stress she suffered from the harassment, Ms. Scheppelman believed that her nursing license was at risk due to her inability to provide proper care to inmates while suffering from the officers' harassment. Her only option to protect her nursing license was to leave the position.

40. As a direct and proximate result of Defendants' wrongful acts and omissions, Ms. Scheppelman has sustained loss of earnings and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

41. On or about October 11, 2023, Ms. Scheppelman filed a Complaint with the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC").

42. The EEOC issued a notice of suit rights on July 24, 2024, pursuant to Title 7, The Americans with Disability Act and/or the Age Discrimination Employment Act allowing Ms. Scheppelman to file a complaint under Federal Law based on this charge in Federal or State Court (EXHIBIT 1).

43. As part of this Complaint, Ms. Scheppelman is alleging that Defendants are biased and unlawfully in favor of younger people working for them.

## COUNT I – DISCRIMINATION BASED ON AGE UNDER THE ADEA

44. Plaintiff hereby realleges and incorporates by reference the allegations contained in previous and subsequent paragraphs.

45. Defendant Berrien County is an employer within the meaning of the ADEA.

46. Defendants' conduct, as alleged above, constitutes intentional age discrimination against Ms. Scheppelman.

47. Defendant through its agents, representatives and employees, was predisposed to discriminate against Ms. Scheppelman due to her age, and acted in accordance with that predisposition.

48. Defendant, through its agents, representatives and employees, treated Ms. Scheppelman differently from similar situated younger employees in the

terms and conditions of employment, based upon the unlawful consideration of age.

49. Ms. Scheppelman's age was a determining factor in Defendant's conduct and decisions made affecting her employment, as alleged above.

50. Defendant constructively discharged Ms. Scheppelman because of her age and the perceptions they held regarding her age.

51. As a result of the constructive discharge set forth above Ms. Scheppelman suffered and will continue to suffer damages.

52. This claim is actionable under the ADEA, 29 USC §621, *et seq*.

WHEREFORE, Plaintiff claims judgment against the Defendants in an amount to which she is found to be entitled, together with interest, costs, attorney fees and exemplary damages in addition to any further legal and/or other relief that this Court or a jury deems equitable or just.

**COUNT II – DISCRIMINATION BASED ON AGE UNDER THE ELCRA**

53. Plaintiff hereby realleges and incorporates by reference the allegations contained in previous and subsequent paragraphs.

54. Defendant Berrien County is an employer within the meaning of the ELCRA.

55. Defendant's conduct, as stated above, constitutes intentional age discrimination against Ms. Scheppelman.

56. Defendant, through its agents, representatives and employees, were predisposed to discriminate against Ms. Scheppelman because of her age, and acted in accordance with that predisposition.

57. Defendants, through their agents, representatives and employees, treated Ms. Scheppelman differently from similar situated younger employees in the terms and conditions of employment, based upon the unlawful consideration of age.

58. Ms. Scheppelman's age was a motivating factor in Defendants' conduct toward Ms. Scheppelman, as alleged above.

59. Defendants constructively discharged Ms. Scheppelman because of her age and the perceptions they held regarding her age.

60. As a result of the constructive discharge set forth above Ms. Scheppelman suffered and will continue to suffer damages.

61. Defendant's conduct constitutes discrimination and is violates the ELCRA, MCL 37.2200, *et. seq.*

WHEREFORE, Plaintiff claims judgment against the Defendants in an amount to which she is found to be entitled, together with interest, costs, attorney fees and exemplary damages in addition to any further legal and/or other relief that this Court or a jury deems equitable or just.

                                                  Respectfully submitted,

                                                  /s/ Todd F. Flood
                                                  **TODD F. FLOOD (P58555)**
                                                  Ryan E. Myers
                                                  Flood Law, PLLC
                                                  155 West Congress Street, Suite 350
                                                  Detroit, Michigan 48226
                                                  PH: (248) 547-1032
                                                  tflood@floodlaw.com
                                                  rmyers@floodlaw.com

Date: August 22, 2025

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

**TAMARA SCHEPPELMAN**

      Plaintiff,                    Case No. 1:24-cv-01104-HYJ-RSK

v.                                    COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**COUNTY OF BERRIEN and**
**WELLPATH, LLC**                      JURY TRIAL DEMANDED

      Defendants.

_____

**TODD F. FLOOD (P58555)**
Ryan E. Myers
Flood Law, PLLC
155 West Congress Street, Suite 350
Detroit, Michigan 48226
PH: (248) 547-1032
tflood@floodlaw.com
*Attorney for Plaintiff*

## **JURY DEMAND**

Plaintiff, TAMARA SCHEPPELMAN, through her attorneys, FLOOD LAW, PLLC, hereby demands a trial by jury of all of the issues in above-captioned matter.

Respectfully submitted,

/s/ Todd F. Flood
**TODD F. FLOOD (P58555)**
Ryan E. Myers
Flood Law, PLLC
155 West Congress Street, Suite 350
Detroit, Michigan 48226
PH: (248) 547-1032
tflood@floodlaw.com
rmyers@floodlaw.com