UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMARA SCHEPPELMAN,

    Plaintiff,

v.

COUNTY OF BERRIEN, et al.,

    Defendants.

_____/

Case No. 1:24-cv-1104

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiff Tamara Scheppelman brings this workplace age discrimination lawsuit against Defendant Berrien County under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq*. Scheppelman alleges that during her time as a nurse at the Berrien County Jail, jail officers verbally harassed her and prevented her from completing her work, which ultimately caused her to resign. Berrien County now moves to dismiss Scheppelman's first amended complaint, arguing that the County was not Scheppelman's employer, that she has not sufficiently alleged the existence of a hostile work environment, and that the County is not vicariously liable for the discriminatory actions of the jail officers (ECF No. 20). For the reasons discussed below, the Court will grant the motion.

### **I. BACKGROUND**

Scheppelman worked as a registered nurse at the Berrien County Jail ("BCJ") from May of 2016 to January of 2023. (Am. Compl. ¶¶ 3, 38, ECF No. 18.) During this time, the County was not formally Scheppelman's employer; rather, she was hired by Wellpath, a company that

contracted with the County.[1]  (*See* Am. Compl. ¶¶ 3, 14–15; Compl. ¶¶ 3–4, ECF No. 1.) Scheppelman "was hired specifically for a position at [the] BCJ and the entirety of her work occurred [there]." (Am. Compl. ¶ 15.) Scheppelman alleges that "BCJ officers would direct Ms. Scheppelman where to go during working hours, exerting control over her day-to-day schedule." (*Id.* ¶ 16.) Furthermore, BCJ "[o]fficers threatened employees, including Ms. Scheppelman, with removal of their clearance if they did not follow the officers' direction, which would effectively remove the employee's ability to work at [the] BCJ." (*Id.* ¶ 17.) And BCJ officials "would also report on the performance of nurses . . . to their supervisor." (*Id.* ¶ 18.)

Scheppelman's claims arise from alleged age discrimination that took place while she worked at the BCJ. Scheppelman was 59 years old when she began working there. (*Id.* ¶ 12.) She alleges that BCJ officers frequently made derogatory comments about her age. One, Officer Culbertson, repeatedly asked questions like "Aren't you too old to be working here?"; "When are you going to retire?"; and "Why do we always get the old nurses?" (*Id.* ¶ 21.) Another, Officer Bowman, "dismissed Ms. Scheppelman's capabilities by saying she was 'too old'" and "frequently . . . referr[ed] to her as 'slow.'" (*Id.* ¶¶ 22–23.)

In addition to verbal harassment, Scheppelman alleges that BCJ officers—including Culbertson and Bowman—intentionally interfered with the performance of her nursing duties. Those duties involved administering medications to inmates, a task that had to be completed by 9:00 p.m. (*Id.* ¶¶ 24–25.) Scheppelman alleges that BCJ officers would often prevent her from completing this task on time by, for example, refusing to unlock doors or taking an unreasonably long time to do so, or interrupting her work to address purported "emergencies" that were not truly

---

[1] Wellpath was initially named as a defendant in this lawsuit, but the Court subsequently dismissed it because all claims against the company were discharged in a bankruptcy proceeding. (*See* 6/20/2025 Notice, ECF No. 11; 7/11/2025 Order, ECF No. 13.)

urgent.  (*Id.* ¶¶ 26, 28.)  She also alleges that as she was trying to complete her work, "BCJ Officers frequently taunted [her] with derogatory remarks over the BCJ radio system," including calling her "slow."  (*Id.* ¶ 28.)  Furthermore, once the 9:00 p.m. deadline had passed, the officers "would lock her out of inmate facilities and forbid her from finishing her nursing duties."  (*Id.* ¶ 27.)

Scheppelman complained about the Jail officers' actions to her supervisor at Wellpath, who "sent an e-mail to BCJ Officers instructing them to only interrupt nurses in cases of true emergencies."  (*Id.* ¶¶ 30–31.)  However, this did not resolve the problem.  (*Id.* ¶ 32.)  Ultimately, Scheppelman concluded that the officers' interference with her work was preventing her from complying with her professional duties as a nurse, and she resigned from her position on or about January 12, 2023.  (*Id.* ¶¶ 38–39.)

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).  When

3

considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

### III. ANALYSIS

The County argues that Scheppelman has failed to state a claim because (1) she has not sufficiently alleged that the County was her employer, (2) she has not sufficiently alleged that she was discriminated against based on age, and (3) she has not sufficiently alleged that the County is liable for the discrimination. As explained below, the Court finds that Scheppelman has sufficiently alleged that the County was her employer and that BCJ officers discriminated against her based on age; however, she has not sufficiently alleged that the County is liable for the discriminatory actions of the BCJ officers. Thus, she has failed to state a claim.

**A. Scheppelman's Employer**

The County argues that it is not liable for any workplace discrimination that Scheppelman may have experienced because she was employed by Wellpath, not the County. Scheppelman acknowledges that Wellpath was her formal employer, but contends that BCJ officers exerted enough control over her working conditions to make the County her employer for the purposes of ADEA and ELCRA liability.

**1. ADEA**

The ADEA prohibits age discrimination by employers, but does not clarify what constitutes an employment relationship. *See* 29 U.S.C. § 623. "Although a direct employment relationship provides the usual basis for liability under the ADEA . . . courts have fashioned various doctrines by which a defendant that does not directly employ a plaintiff may still be considered an 'employer' under th[e] statute[]." *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997). Here, Scheppelman relies on the "joint employer" doctrine, under which

4

"courts consider whether one defendant has control over another company's employees sufficient to show that the two [entities] are acting as a 'joint employer' of those employees." *Id.* "The basis of the [joint employer] finding is simply that one employer[,] while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Id.* at 993 n.4 (first alteration in original).

Scheppelman argues that BCJ officers' control over her day-to-day activities rendered the County and Wellpath joint employers. "To determine whether an entity is the plaintiff's joint employer, [courts] look to an entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance." *EEOC v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013).[2] Scheppelman was hired by Wellpath and does not allege that the County had any role in the hiring process. (*See* Am. Compl. ¶ 3.) However, she alleges that the County could essentially fire her by revoking her clearance to work at BCJ. (*Id.* ¶ 17.) Scheppelman does not indicate that the County had any role in disciplining her, though she notes that BCJ officials sometimes reported on nurses' performance to their supervisors. (*Id.* ¶ 18.) Scheppelman also does not allege that the County could affect her compensation, other than via the aforementioned clearance revocation. However, she alleges that the County had significant control over her work because she was required to follow BCJ officials' orders, including "where to go during working hours." (*Id.* ¶¶ 16–17.) On the other hand, Scheppelman's direct supervisor was a Wellpath employee, and she does not indicate that she reported to any particular BCJ employee. (*Id.* ¶ 30.)

---

[2] *Skansa* is a Title VII case, but "courts routinely employ Title VII and ADEA case law interchangeably." *Amini v. Rite Aid Corp.*, 819 F. App'x 344, 347 (6th Cir. 2020) (quoting *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 835 (6th Cir. 1996)).

The Sixth Circuit has found a defendant's ability to functionally end a plaintiff's employment as a strong consideration in favor of deeming the defendant a joint employer. *See Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 874–877 (6th Cir. 1991) (nurse who was formally employed by doctor was employee of hospital under Title VII because hospital could bar her from working on the premises). However, this principle does not apply if the defendant can only bar the plaintiff from a particular facility, and the plaintiff's formal employer can simply reassign them somewhere else. *See Nethery v. Quality Care Invs.*, 814 F. App'x 97, 104 (6th Cir. 2020) ("Although [the defendant] may have affected [the plaintiff's] ability to work at [one] facility, it did not prevent her from working for [her employer] at other facilities."); *Parks v. Lyash*, No. 22-5841, 2023 WL 6237062, at *5 (6th Cir. Apr. 12, 2023) ("Having the authority to remove an employee from the property is not the equivalent of terminating their employment; nor does it evidence the necessary control over the employee to establish joint employer status." (quoting *Sims v. EQT Corp.*, No. 13-1235, 2014 WL 4384593, at *5 (W.D. Pa. Sep. 4, 2014))).

Scheppelman alleges that the County could revoke her clearance and thus bar her from working at the BCJ, but she does not clarify how this would have impacted her employment with Wellpath. Because Scheppelman worked at the BCJ during the entirety of her employment with Wellpath, it is plausible that her being barred from the BCJ would have caused Wellpath to terminate her. On the other hand, perhaps Wellpath contracted to provide nurses at other facilities, and could have merely transferred Scheppelman elsewhere. The fact that Scheppelman's issues at the BCJ caused her to resign her position rather than seek a transfer provides some reason to think a transfer was not available, but it certainly does not foreclose the possibility. Ultimately, in the absence of facts indicating otherwise—and drawing all reasonable inferences in Scheppelman's favor—it is plausible to infer that the BCJ's ability to bar Scheppelman from its facility was

essentially equivalent to the ability to terminate her from Wellpath.  Given that inference, *Christopher* provides strong support for the conclusion that the County was Scheppelman's employer for ADEA purposes.

This conclusion is strengthened in light of the control the County exerted over Scheppelman's day-to-day work.  The County determined what work Scheppelman performed and when she would perform it.  It also had significant control over her ability to move through the jail, as evidenced by the obstacles BCJ employees put in her path.  Especially relevant here, the County chose who Scheppelman worked with, and thus essentially controlled her working environment.  Additionally, although Scheppelman's formal supervisor was a Wellpath employee, she was required to follow the orders of BCJ officers.  Altogether, these facts—combined with the County's ability to functionally terminate her at any time—are sufficient to suggest that the County was Scheppelman's employer under the ADEA.

The County argues that some features of the working environment should not factor into the employer analysis because they are simply reflective of the control that any person is subject to in a jail.  *See Zinn v. McKune*, 143 F.3d 1353, 1357–59 (10th Cir. 1998) (prison was not employer of nurse despite significant control exercised over her work because, "though valid penological measures imposed to ensure safety and security within a facility may require a worker to fulfill certain conditions, those conditions do not rise to the level of 'control' for purposes of determining a worker's employment status with the correctional facility itself").  However, some aspects of the County's control over Scheppelman relate to the manner in which she performed her work, and are not directly linked to security concerns.  More significantly, the Court is not persuaded that the motivation behind a defendant's exercise of control determines whether that control factors into an analysis of the employment relationship.  Even if the County only controlled

7

Scheppelman's movements for security reasons, that motive does not lessen the significance of the control exerted. Thus, that control is a legitimate basis to conclude that the County was Scheppelman's employer. *See Fisher v. Mich. Dep't of Corrs.*, No. 1:20-CV-302, 2023 WL 9064591, at *1, 3 (W.D. Mich. Oct. 2, 2023) (department of corrections was joint employer of plaintiff who worked in its prisons because the department "controlled all aspects of the physical workplace of [the] employees," "correctional officers had sole authority over prison doors," and "employees were required to follow . . . prison security protocols and procedures"). In sum, Scheppelman has sufficiently alleged that the County was her employer under the ADEA.

### 2. ELCRA

Like the ADEA, the ELCRA prohibits age discrimination by employers. Mich. Comp. Laws §§ 37.2201–02. "To determine whether an employment relationship exists [under the ELCRA], Michigan courts use the 'economic realities test.'" *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 853 (6th Cir. 2017). This test requires analyzing four factors: "(1) [the] control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Id.* (alteration in original) (quoting *Clark v. United Techs. Auto., Inc.*, 594 N.W.2d 447, 451 (Mich. 1999)). The economic realities test can be used to determine whether "a second entity" that is not the worker's "'legal' or 'actual' employer" still qualifies as an employer. *Clark*, 594 N.W.2d at 451.

Here, the first factor weighs in favor of an employment relationship because the County had significant control over Scheppelman's duties. The second factor weighs against an employment relationship because it appears that Wellpath, rather than the County, paid Scheppelman. The third factor is mixed: the County did not hire or discipline Scheppelman, but—as discussed above—it essentially had the power to fire her. The last factor weighs in favor of an

8

employment relationship because Scheppelman's work—providing medical care to inmates—was an integral part of the BCJ's operations and thus served the County's goals. Putting these factors together, the Court is persuaded that the County qualifies as Scheppelman's employer under the ELCRA, largely for the same reasons it qualifies as her employer under the ADEA. *Cf. Rouch World, LLC v. Dep't of C.R.*, 987 N.W.2d 501, 507 (Mich. 2022) ("In interpreting the ELCRA specifically, [the Michigan Supreme] Court has encouraged using as guidance federal precedent interpreting Title VII of the federal Civil Rights Act, the statute on which the ELCRA was based.").

### B. Age Discrimination

The County also argues that Scheppelman has failed to sufficiently allege that she was discriminated against based on age. Because "ELCRA claims are analyzed under the same standards as federal ADEA claims," *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009), the Court will address the claims together.³

Scheppelman argues that she was constructively discharged by the existence of a hostile work environment at the BCJ. A hostile work environment claim requires that a plaintiff was harassed due to their age, "either through words or actions," and that the harassment was "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Brown v. Metro. Gov't of Nashville & Davidson Cnty.*, 722 F. App'x 520, 525 (6th Cir. 2018) (alteration in original). Additionally, "[a] hostile-environment constructive discharge claim" requires "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Id.* (alteration in original) (quoting *Pa. State Police v.*

---

³ Scheppelman argues that the two statutes are different because the ELCRA imposes a "substantial factor" causation test for a discrimination claim, in contrast to the ADEA's "but-for" causation test. (Pl.'s Resp. Br. 14). This is incorrect, as the Michigan Supreme Court has recognized that "the operative phrase 'because of' in the ELCRA establishes a but-for causation standard." *Rouch*, 987 N.W.2d at 512. Regardless, the application of either standard entails the same result here.

9

*Suders*, 542 U.S. 129, 147 (2004)).  In determining whether a hostile work environment exists, courts should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Scheppelman argues that she was subject to both verbal harassment and harassing conduct based on age.  Specifically, she points to (1) Culbertson making comments like "Aren't you too old to be working here?"; "When are you going to retire?"; and "Why do we always get the old nurses?"; (2) Bowman "dismiss[ing] Ms. Scheppelman's capabilities by saying she was 'too old'" and "frequently . . . referring to her as 'slow.'"; (3) BCJ officers preventing her from administering medication by refusing to unlock units within a reasonable time and interrupting her with pretend emergencies; (4) BCJ officers taunting her over the intercom, such as by calling her "slow," as she was completing her work.  (Am. Compl. ¶¶ 21–23, 26, 28.)

The County argues that Scheppelman has not alleged facts supporting the inference that the BCJ officers' conduct was based on her age.  Some of the comments described above are self-evidently due to Scheppelman's age.  But the officers' insults do not alone support a hostile work environment claim, as statements that are "insensitive, ignorant, and bigoted" do not produce a hostile work environment if they "more closely resemble a 'mere offensive utterance' than conduct that is 'physically threatening or humiliating.'"  *Williams*, 643 F.3d at 513 (quoting *Harris*, 510 U.S. at 23).  Rather, Scheppelman has only alleged a hostile work environment if the officers' other conduct is considered as well, and that conduct is properly considered in the analysis only if she has sufficiently alleged that it was based on a discriminatory motive.

10

Although the officers' interference with Scheppelman's work was not explicitly based on age, it can still support a hostile work environment claim if one can reasonably infer that the officers only treated her poorly due to her age. *See Clay v. UPS, Inc.*, 501 F.3d 695, 706 (6th Cir. 2007) ("Conduct that is not explicitly race-based may be illegally race-based and properly considered in a hostile-work-environment analysis when it can be shown that but for the employee's race, she would not have been the object of harassment."). In determining whether the officers' treatment of Scheppelman was based on her age, the Court considers the officers' conduct in light of "all of the circumstances." *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 605 (6th Cir. 2002), *abrogated on other grounds by White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232 (6th Cir. 2005).

Considering all of the circumstances, the complaint sufficiently alleges that the officers' conduct was based on Scheppelman's age. The pervasive nature of the age-based comments suggests that the officers generally looked down on Scheppelman due to her age; this, in turn, supports the inference that their negative treatment of her was age-based. *Cf. Jackson v. Quanex Corp.*, 191 F.3d 647, 662 (6th Cir. 1999) ("[A] showing of the use of racial epithets in a work environment may create an inference that racial animus motivated other conduct as well."); *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 469–70 (6th Cir. 2009) (hostile work environment can be supported by evidence that supervisor had "systematic racial bias" and a racist "managerial philosophy"). Furthermore, the officers' alleged interference with Scheppelman's work is so unreasonable—and so contrary to their own duties as employees, let alone the medical needs of inmates—that discriminatory intent becomes a plausible explanation. *Cf. Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 641 (6th Cir. 2009) (in the commercial establishment context, plaintiff can establish inference of discriminatory intent by showing that defendant's conduct was against

11

own interests, violative of business norms, and "arbitrary on its face"). Additionally, Scheppelman alleges that much of the obstructive conduct took place while the officers made derogatory comments over the intercom, which directly ties their discriminatory motives to their conduct. It is true that the example of a derogatory comment provided in the complaint—calling Scheppelman "slow"—is not inherently an age-based remark. But Scheppelman's allegation that Bowman called her "too old" and "slow" suggests that the word "slow" was understood by the officers to be an age-based insult. Putting all this together, it is reasonable to interpret the officers' conduct as motivated by discriminatory intent.

Given the inference that the officers' conduct was discriminatory, Scheppelman has sufficiently alleged that she was subject to an age-based hostile work environment. The officers' obstructive conduct was frequent and pervasive, and "unreasonably interfere[d] with [her] work performance." *Williams*, 643 F.3d at 512. Indeed, the officers' behavior during her medication rounds made it essentially impossible for her to complete her work. Furthermore, when faced with such constant interference—especially given the importance of a nurse's medical duties—"a reasonable person would have felt compelled to resign." *Brown*, 722 F. App'x at 525. These elements, taken together, indicate that the BCJ officers created a hostile work environment.[4]

### C. Vicarious Liability

Even if BCJ officers discriminated against Scheppelman, she must also allege facts suggesting that the County is liable for the actions of those officers. Under federal law, an employer's liability for the harassing actions of its employees depends on the status of those

---

[4] The County argues that Scheppelman has failed to state a claim because she has not established the elements of a prima facie case. However, a plaintiff alleging discrimination "need not make a prima facie showing to survive a motion to dismiss." *Bar v. Kalitta Charters II, LLC*, No. 21-1739, 2022 WL 3042844, at *3 (6th Cir. Aug. 2, 2022). Rather, "a plaintiff need only allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that an employer violated [the ADEA and ELCRA]." *Id.* (cleaned up). Scheppelman has met that burden here.

employees. "If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). If the harasser is a supervisor, and the supervisor performs a "tangible employment action" such as firing the plaintiff, "the employer is strictly liable." *Id.* If there is no tangible employment action, "the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Id.*

Here, the BCJ officers who allegedly harassed Scheppelman were not her supervisors. It is true that the officers had substantial control over Scheppelman's work, and that she was required to follow their commands. However, the Supreme Court has rejected the view that supervisors include anyone with "the ability to exercise significant direction over another's daily work." *Id.* at 431. Rather, the Court has held that supervisors are only those who have been empowered by the employer "to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* (quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Scheppelman does not allege that the BCJ officers had such power. Thus, the hostile work environment here was created by Scheppelman's co-workers, and the County "is liable only if it was negligent in controlling working conditions." *Vance*, 570 U.S. at 424.

An employer is negligent if it "knew or should have known" about the harassing working conditions and "failed to take appropriate remedial action." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 276 (6th Cir. 2009). Because there is no allegation that the County

13

took any remedial action, its liability turns on whether it was on notice that Scheppelman was being harassed. "An employer is deemed to have notice of harassment reported to any supervisor or department head who has been authorized—or is reasonably believed by a complaining employee to have been authorized—to receive and respond to or forward such complaints to management." *Id.* at 277. Moreover, "[w]here harassment is pervasive, knowledge may be imputed to the employer." *Id.* at 276.

Viewing the allegations in the light most favorable to Scheppelman, she has not sufficiently alleged that the County was on notice of the officers' harassment. The only report that Scheppelman made about the officers was to her own supervisor at Wellpath, who then emailed BCJ officers about the issue. Scheppelman does not allege that the email went to BCJ management, or that the email specifically mentioned age discrimination. The officers' behavior, which prevented Scheppelman from fulfilling the basic duties of her job, was arguably pervasive enough to put the County on constructive notice that it was occurring. But even if County officials should have known that BCJ officers were interfering with Scheppelman's work, they had no reason to know about the alleged discriminatory motive behind that interference. An employer's failure to ameliorate a hostile work environment is actionable under the ADEA because "[t]he act of discrimination by the employer in such a case is . . . the inappropriate response to the charges of harassment." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005) (quoting *Blankenship v. Parke Care Ctrs., Inc.*, 123 F.3d 868, 873 (6th Cir. 1997)). "Thus, an employer who implements a remedy 'can be liable for . . . discrimination . . . only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination." *Id.* (quoting *Blankenship*, 123 F.3d at 873). If an employer knows that its employees are mistreating the plaintiff, but not that the mistreatment is based on the plaintiff's protected status, its response

14

cannot amount to discrimination. *Cf. Gallagher*, 567 F.3d at 277 (considering, as part of notice analysis, that the plaintiff "did not necessarily characterize all of her complaints as sexual harassment complaints"). Thus, even if the County was on notice of the BCJ officers' actions, it was not necessarily on notice of the actions' discriminatory character, and thus did not violate the ADEA by failing to respond.

Michigan courts have established a slightly different framework for vicarious liability under the ELCRA, but that framework leads to the same result here. An employer's liability is narrower under the ELCRA because the Michigan Supreme Court has expressly declined to adopt the federal standard described above, under which an employer must present an affirmative defense to avoid liability for the harassing actions of a supervisor. *Chambers v. Trettco, Inc.*, 614 N.W.2d 910, 917–18 (Mich. 2000). Regardless, because Scheppelman was not subjected to a tangible employment action, she "must show some *fault* on the part of the employer." *Id.* at 916. A hostile work environment "can only be attributed to the employer if the employer failed to take prompt and adequate remedial action after having been reasonably put on notice of the harassment." *Id.* at 916. "[N]otice of . . . harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that . . . harassment was occurring." *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 861 (Mich. 2005). For the reasons discussed above, Scheppelman has not alleged that the County was on notice that age-based harassment was occurring at the BCJ; thus, she has failed to state an ELCRA claim against the County.

## IV. CONCLUSION

For the reasons explained above, Scheppelman has sufficiently alleged that Berrien County was her employer and that BCJ officers discriminated against her based on age, but not that the

County is vicariously liable for the actions of those officers.  Therefore, the Court will grant the County's motion to dismiss.

An order and judgment will issue in accordance with this Opinion.

Dated: November 7, 2025                     /s/ Hala Y. Jarbou
                                                        HALA Y. JARBOU
                                                        CHIEF UNITED STATES DISTRICT JUDGE